RECEIVED
CLERK'S OFFICE

2017 JUL 26 PM 12: 08

**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

|  |  |
|---|---|
| UNITED STATES OF AMERICA *ex rel*. WEBSTER LUBEMBA,<br>　　　Plaintiff-Relator,<br>　　　v.<br>GARDA USA, INC. and<br>GARDA CL SOUTHEAST, INC.,<br><br>　　　Defendants. | : **FILED UNDER SEAL**<br>: **Pursuant to 31 U.S.C. § 3730**<br>:<br>: **Civil Action No.:** **5 : 17-CV- 286**<br>: **Jury Trial Demand**<br>:<br>: **False Claims Act Complaint**<br>:<br>: |

## I. INTRODUCTION

1.

Relator Webster Lubemba (the "Relator") brings this *qui tam* False Claims Act Complaint ("Complaint") on behalf of the United States of America ("United States") and in his own name pursuant to the provisions of the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA"), against Garda USA, Inc. and Garda CL Southeast, Inc. (collectively, "Garda").

2.

The violations alleged arise out of the presentation of claims made, directly or indirectly, to the United States Government and the Board of Governors of the Federal Reserve (collectively, "Federal Reserve" or "United States") by Garda, or

by others acting on its behalf, to receive the United States' approval and/or payment of contracts for the storage of Federal Reserve currency and coin in Garda's cash vaults. Garda falsely represented, and continues to represent to the Federal Reserve that it will adhere to the provisions set forth in the contracts. Garda made all representations to the Federal Reserve knowing it will abuse its position as a custodian of Federal Reserve inventories by fraudulently converting the funds for its own business purposes. The scheme employed by Garda to defraud the United States includes: (1) Misappropriation, Misuse and Conversion of Inventories; (2) False Reporting of Inventories; (3) Inadequate and Failed Security Measures; and (4) Unauthorized Access to Inventories.

## II. FEDERAL JURISDICTION AND VENUE

3.

This Court has original federal subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case arises under the False Claims Act.

4.

This Court has personal jurisdiction over Garda pursuant to 31 U.S.C. § 3732(a) because Garda can be found in, resides in, or transacts business in this District. Additionally, this Court has personal jurisdiction over Garda because acts

KH428964.DOC 3

2

prohibited by 31 U.S.C. § 3729 were performed by Garda in this District at its branch located at 4555 Knight Road, Macon, Georgia 31220.

5.

Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because Garda transacts business in this District, and numerous acts proscribed by 31 U.S.C. § 3729 occurred in this District at Garda's Macon, Georgia branch.

## III.   PROCEDURAL ALLEGATIONS

6.

To the extent, if any, that this case is deemed to be a "related action" and to the extent, if any, that facts set forth herein are deemed to be the same as facts underlying an existing *qui tam* FCA action pending at the time of the filing of this action, as set forth in 31 U.S.C. § 3730(e), said factual allegations in common with any pending action that would cause this case to be a "related action" are hereby expressly excluded from this action, but only to the limited extent necessary to avoid the statutory preemption.

7.

Furthermore, to the extent that the allegations or transactions set forth herein are the subject of civil suit or an administrative civil money penalty proceeding in which the United States is already a party, if any such proceedings exist, then the

allegations or transactions referred to herein, which are the subject of any such civil suit or administrative civil penalty proceedings are expressly excluded, but only for the specific time periods, specific companies, and/or specific allegations or transactions that are already the subject of the civil suit and/or administrative civil money penalty proceeding.

8.

The facts and circumstances of Garda's violation of the FCA have not been publicly disclosed in a criminal, civil, or administrative hearing, nor in any congressional, administrative, or General Accounting Office or Auditor General's report, hearing, audit, or investigation, or in the news media.

9.

Relator is the "original source," as that term is used in the FCA, of the information upon which this Complaint is based. Relator brings this action based on his direct knowledge and, where indicated, on information and belief. None of the actionable allegations set forth in this Complaint are based on a public disclosure as set forth in 31 U.S.C. §3730(e)(4).

10.

Immediately upon filing this Complaint, Relator will provide the Attorney General with a copy of the Complaint and written disclosure of substantially all

material evidence and information in his possession. The illegal conduct of Garda alleged herein began in 2007 and, on information and belief, continues through the date of the filing of this Complaint. The allegations herein have not been the subject of any settlement agreement between these Defendants and the United States Government.

## IV.   PARTIES

11.

Relator is a citizen of the United States and a resident of the State of Georgia. At times relevant and material to this Complaint, Relator was employed by Garda. On or about January 28, 2005, Relator began his employment with Garda's predecessor, ATI Systems International, Inc. ("ATI Systems"). Garda acquired ATI Systems in or around February 2007. Relator remained in Garda's employ until his retaliatory discharge on or about March 29, 2017.

12.

During his ten (10) year employment with Garda, Relator served as Safety Officer and Corporate Trainer from approximately March 2007 to February 2010, Corporate Health and Safety Manager from approximately February 2010 to May 2014, and Security Manager and Investigator from approximately May 2014 to March 29, 2017. By virtue of Relator's positions, he had insight into Garda's

security practices as well as Garda's procedures to monitor and manage each client's currency and coin inventory.   In Relator's Security Manager and Investigator ("Investigator") position, he was responsible for overseeing security operations and investigations in Georgia, Tennessee, Arkansas, North Carolina, and South Carolina. As an Investigator, he was also privy to security breaches throughout the United States. Relator has knowledge of the information in this Complaint based on his personal knowledge, as well as from independent investigations conducted by Relator, which include information received by Relator from executives and employees of Garda.

13.

Garda USA, Inc. is a Delaware Corporation with its principal place of business located at 2000 NW Corporate Blvd, Boca Raton, Florida 33431.  It may be served at its principal place of business or at 700 South Federal Highway, Suite 300, Boca Raton, Florida 33432.

14.

Garda CL Southeast, Inc. is a Georgia Corporation organized under the laws of the State of Georgia. Its principal place of business is located at 2000 NW Corporate Blvd, Boca Raton, Florida 33431. It may be served through its registered

agent Corporate Creations Network Inc. at 2985 Gordy Parkway, 1st Floor, Marietta, Georgia 30066.

## V.   GENERAL ALLEGATIONS

### Garda's Business and Operations

15.

Garda specializes in providing security services to the public and private sectors. Garda's parent corporation, Garda World Security Corporation, a corporation organized under the laws of Canada, entered the United States market in the early 2000s by acquiring multiple cash logistics and armored car companies, including ATI Systems.

16.

Upon information and belief, Garda World Security Corporation's United States operations is under Garda USA Inc., which is organized under regional subsidiary corporations, including Garda CL Southeast Inc. Upon information and belief, each regional subsidiary, including Garda CL Southeast Inc., is controlled by Garda USA, Inc., and shares the same corporate officers and principal place of business as Garda USA, Inc.

17.

According to Garda's website, it is one of the largest privately owned business solutions and security service companies in the world. It now has over 12,000 clients in the United States, which includes private financial institutions, armored car and security services companies, retailers, and the Federal Reserve.[1]

18.

Garda provides armored car transportation services, cash vault services, ATM services, check imaging, smart safes, and change order processing services. The allegations in this Complaint relate to Garda's cash vault services.

**Garda's Security Procedures**

19.

Each Garda branch is designed to store the inventories of multiple private financial institutions, the Federal Reserve, and ATMs. The branches are designed to have one or more large vaults that house the different inventories in segregated cages. Each segregated cage is designed to have functional CCTV equipment recording from multiple angles and restricted access to authorized personnel.

---

[1] Garda's private financial institution customers include, but are not limited to, Bank of America, Wells Fargo, Union Bank, and BB&T; its armored car and security services companies include, but are not limited to, Loomis, Brinks and Dunbar; and its retail companies include, but is not limited to, Wal-Mart.

KH428964.DOC 3                                   8

20.

In addition to storing its customer's inventories, Garda fulfills orders for currency and coin submitted by its financial institution customers to the Federal Reserve. When a financial institution orders currency from the Federal Reserve, the Federal Reserve authorizes Garda to access its inventory and deliver the order to the financial institution.

21.

When each Garda branch closes its operations for the day, three employees must perform the closing procedures, which include balancing and accounting for all liability in each inventory, securing the cages and the vault, setting the alarm systems, and following all required safety controls. Garda's branches should not close their operations for the day if any customer inventories are missing currency and/or coin, or if any inventory is out of balance.

**Garda's Failure to Execute Security Procedures**

22.

Garda's failure to respond to known violations of security procedures creates and promotes an unprofessional environment that results in unsecured inventories and thefts by employees and/or management.

23.

Garda's failure to execute security procedures includes, but is not limited to, the following:

- Lack of physical security guards to survey premises and monitor the activities of employees;
- Poor hiring practices that allow management to hire employees that are family and friends;
- Lack of proper employee training;
- Use of ill functioning or damaged CCTV equipment and alarm systems;
- Delayed reporting or failure to report missing currency and/or coin to corporate security within 24 hours;
- Failure to follow daily closing and opening procedures, including the failure to address and resolve inventory deficits prior to closing branches;
- Access of coin and currency inventories when CCTV equipment is not functional;
- Permitting Non-Garda personnel, such as mechanics and vendors, to walk through currency and coin processing areas without escorts and without security clearance; and
- Careless sharing of access and override credentials to inventory databases and alarm systems.

24.

Due to Garda's failure to execute safety procedures, every quarter the Georgia branches suffer a persistent carried over inventory deficit in excess of $300,000.00.

KH428964.DOC 3                                     10

## The Federal Reserve Contracts

25.

The Federal Reserve contracts with Garda for cash vault and security services. Specifically, Garda stores Federal Reserve currency and coin in cash vaults located throughout the United States, including Macon and Atlanta, Georgia.

26.

Upon information and belief, Garda receives payments for the services it provides under the contracts.

27.

Upon information and belief, the Federal Reserve maintains two separate contracts with Garda. The first contract is for Garda to securely store Federal Reserve inventories and fulfill currency and/or coin requests and purchases from private financial institutions. The second contract is for Garda to securely store Federal Reserve inventories in a reserve known as a Strategic Inventory. The facilities that maintain Strategic Inventories are qualified as Strategic Inventory Locations ("SILs"). SILs provide national security and continuity during unexpected emergency events.

28.

Upon information and belief, incorporated into the SIL contract is the SIL Manual of Procedures (hereinafter, "MOP").

29.

The MOP details the procedures for packaging, loading, unloading, and paying out the inventory to Federal Reserve regional banks. It also details requirements for site security and the secure management of the inventory. It requires that Garda handle and store the Federal Reserve's currency and coin under the controlled conditions outlined in the MOP.

30.

Upon information and belief, the Federal Reserve's contract with Garda for the storage of inventory to fulfill orders from private financial institutions also incorporates a Manual of Procedures with similar procedures as the SIL MOP.

31.

To obtain and maintain the contracts with the Federal Reserve, Garda has, and continues to, fraudulently represent that it will adhere to and follow the controlled conditions for handling and storing Federal Reserve currency and coin.

## Schemes in Violation of the False Claims Act

32.

Relator has knowledge of four (4) different fraud schemes that Garda has perpetrated in violation of its contracts with the Federal Reserve. These schemes include (1) Misappropriation, Misuse and Conversion of Inventories; (2) False Reporting of Inventories; (3) Inadequate and Failed Security Measures; and (4) Unauthorized Access to Inventories. Each scheme is addressed in turn below.

Scheme 1 – Misappropriation, Misuse and Conversion of Inventories

33.

Garda knowingly misappropriates and converts Federal Reserve inventories by accessing the inventories for its own use and benefit.

34.

Garda maintains its own inventory to fulfill orders from its customers and to conduct change order processing services or Even Exchange.[2] To maintain the Garda inventory, it must purchase currency and coin from the Federal Reserve.

---

[2] Change order processing services is the process of converting a customer's large denominations into smaller specific denominations of currency and coin. Even Exchange is a service where a customer orders any amount in any combination, Garda prepares it from its inventory, delivers it to the customer, and the customer sends back an equal amount in any denomination to serve as payment.

KH428964.DOC 3                                          13

35.

Garda does not consistently purchase currency and coin from the Federal Reserve to fulfill orders, but converts funds located in the Federal Reserve inventories that are in its custody.

36.

When Garda needs to conduct a change order processing or Even Exchange transaction that requires specific denominations of currency and/or coin that are not in the Garda inventory, Garda unilaterally withdraws the specific denominations from the Federal Reserve inventories, specifically the Strategic Inventory.

37.

Garda uses and misappropriates the Strategic Inventory because it is a "stale" inventory that is rarely accessed and utilized by the Federal Reserve.

38.

Garda uses the Federal Reserve Strategic Inventory to purchase coin and other currency from armored car companies, such as Loomis, Brinks, and Dunbar. If Garda needs a certain denomination of currency or coin, it withdraws money from the Strategic Inventory and delivers the money to an armored car company for change order processing services.

39.

The Federal Reserve does not authorize or have knowledge about Garda's unilateral withdrawals from the Federal Reserve inventories.

40.

Each withdrawal is a misappropriation and conversion of Federal Reserve funds.

41.

Upon information and belief, Garda does not reimburse all of the currency and coin it removes from Federal Reserve inventories. This conduct results in a continuous deficit in Federal Reserve inventories.

42.

Whenever the Federal Reserve conducts an audit of its inventories, Garda conceals the continuous deficit by misrepresenting a balanced inventory to the Federal Reserve auditors. Specifically, Garda pulls the needed currency and coin from a non-Federal Reserve inventory and adds it to the Federal Reserve inventories. After the audit, Garda either returns the currency and coin to its true owner or further misappropriates it.

43.

Garda knowingly misuses and mishandles Federal Reserve inventories by failing to segregate the two separate inventories. The Federal Reserve's contracts require Garda to maintain the Federal Reserve's SIL inventory and its inventory for order fulfillments in separate segregated cages. Garda's branches in Georgia, as well as branches in other regions, misuse and mishandle the inventories by comingling the two inventories.

44.

Garda knowingly misuses and mishandles the Federal Reserve inventories by not maintaining segregated coin inventories for the Federal Reserve and the private financial institutions. Garda indiscriminately stores all coin, regardless of customer ownership, in a general "coin area."

45.

Upon information and belief, Garda pools and comingles customer inventories to conceal existing and continuous deficits. Comingling funds allows Garda to evade the detection of deficits by shifting funds from one customer's inventory to another.

46.

Garda's management is knowledgeable about the foregoing misappropriation, misuse, and conversion of Federal Reserve inventories.

Scheme 2 – False Reporting of Inventories

47.

The Federal Reserve requires daily and/or periodic reporting for each of its inventories stored in Garda's branches.

48.

The Federal Reserve further requires immediate notification of missing currency and when tamper evident seals are breached, damaged, or compromised.

49.

Upon information and belief, multiple Garda branches have approximately $2 to $3 million in Federal Reserve currency and coin that are missing or unaccounted-for.

50.

Upon information and belief, the missing or unaccounted-for funds are often due to Garda's misappropriation, conversion and misuse of inventories.

51.

Garda does not immediately report to the Federal Reserve every time currency and/or coin are missing or when tamper evident seals are compromised.

52.

Each day Garda knowingly reports an inaccurate accounting balance of Federal Reserve currency and coin in its vaults.

53.

Before Garda implemented an electronic real-time reporting system, it used Vault Inventory Balance Sheets ("VIBS"). Garda manually manipulated the VIBS to report balanced inventories and conceal deficits.

54.

Now that Garda uses an electronic real-time reporting system, it intentionally overrides the system each day to conceal deficits and report balanced inventories before closing out each day's operation.

55.

Garda intentionally submits incorrect reports to hide funds that are currently missing from Federal Reserve inventories.

56.

Upon information and belief, the Federal Reserve does not know the accurate balance of currency and coin in each of its inventories due to Garda's false reporting and misrepresentations. The Federal Reserve is under the false perception that it owns more funds than it actually possesses in the inventories maintained by Garda.

57.

Garda's management is knowledgeable about the foregoing false reporting of inventory balances to the Federal Reserve.

Scheme 3 – Inadequate and Failed Security Measures

58.

Garda was required to install and adhere to certain security measures under its contracts with the Federal Reserve.

59.

Garda represented to the United States and agreed that it would maintain adequate safeguards to prevent unauthorized access to the Federal Reserve's inventories. These safeguards include (1) doors and walls must be of sufficient construction and design quality to protect inventories during and after business hours; (2) restricted access to authorized personnel with access logs or CCTV

KH428964.DOC 3

19

videotape/hard drives; (3) video recording maintained in a secure area for not less than forty-five (45) days (up to 180 days in some cases); (4) continuous recording of inventories, without an obstructed view; and (5) daily review of video recordings by Garda to ensure functionality of equipment and personnel procedural adherence.

60.

Upon information and belief, the Federal Reserve inventories are not stored in locations that are of secure construction and design to prevent unauthorized access. Garda's employees and others have and continue to access the Federal Reserve inventories without authorization, leading to theft.

61.

Upon information and belief, Garda's CCTV equipment does not function properly and does not record video footage. Because video footage is not recorded, Garda does not maintain recordings for at least forty-five (45) days and does not conduct daily or weekly reviews of all recordings.

62.

Upon information and belief, managers and employees carelessly share vault access codes and alarm system credentials amongst themselves.

KH428964.DOC 3                                              20

63.

Upon information and belief, Garda does not comply with dual custody requirements. Dual custody requirements require that all open cash transactions are done under the supervision of two people, or one person and functional CCTV coverage.

64.

Trucks assigned to transport Federal Reserve cargo lack GPS, door locks, and safety protocols for the staff members operating the trucks.

65.

Garda's management is knowledgeable about the foregoing inadequate and failed security measures.

Scheme 4 - Unauthorized Access to Inventories

66.

Before a withdrawal may be made on the Federal Reserve inventories, the Federal Reserve must authorize the withdrawal.

67.

Upon information and belief, Garda accesses Federal Reserve inventories to misuse, misappropriate, and convert funds for Garda's own benefit and use, as more fully explained *supra* in Scheme 1.

KH428964.DOC 3                                21

68.

Garda's management is knowledgeable about the foregoing unauthorized access of Federal Reserve inventories.

**Relator Suffers Retaliation for Whistleblowing**

69.

In Relator's position as an Investigator, he was required to oversee and investigate all corporate complaints, including missing currency and/or coin. Upon receipt of an internal complaint and/or customer claim, Investigators are required to gather evidence and submit a report to corporate security executives Curtis Fox, Director of Security, and Guy Cote, Vice President of Security. All evidence and reports are maintained in a secure case management system that is only accessible to corporate security personnel.

70.

Relator's investigation reports to Mr. Fox and Mr. Cote always included detailed and thorough information analyzing evidence and providing a recommendation. Each of Relator's reports included a "Root Cause" section, which addressed the underlying security violations that created an environment conducive for theft. Relator's report included most of the violations and failed security measures discussed in the foregoing sections.

71.

The reports submitted by other Investigators did not provide detailed and thorough explanations of the underlying security failures, but only included generic, non-substantive information. Multiple Investigators, either directly or indirectly, requested that Relator not submit detailed reports because it reflected poorly on their generic reports.

72.

Upon information and belief, Mr. Fox and Mr. Cote did not address the violations and security failures referenced in Relator's reports, nor did they support Relator's efforts to further investigate complaints and to inform branch operations management of security failures and deficiencies.

73.

The branch operations management for the Georgia branches included Kyle Smith, General Manager, and Karl Buchanan, Vice President Transformation. Relator communicated with Mr. Smith and/or Mr. Buchanan about documented problems relating to human resources practices and security vulnerabilities at the Georgia branches.

74.

Upon information and belief, Mr. Smith and/or Mr. Buchanan refused to respond to issues presented by Relator. Mr. Smith and/or Mr. Buchanan, as well as other management, did not reprimand problematic employees or disarm employees with pending criminal cases predicated on work-related theft.

75.

Upon information and belief, Mr. Buchanan sought to frustrate Relator's efforts to remedy security failures and deficiencies. Mr. Buchanan would discredit Relator's reports and recommendations in favor of branch operations management, even if the failures of management were the underlying causes of the security issues.

76.

Upon information and belief, Mr. Smith purposely and abruptly reduced and/or eliminated the physical security guard force at the Georgia branches despite Relator providing demonstrable proof of reduced incidents of theft and inventory losses. Other branches not managed by Mr. Smith did not see an abrupt reduction and/or elimination in their physical security guard forces.

77.

Upon information and belief, Mr. Smith reduced the physical security guard force in retaliation of the reports Relator submitted regarding security issues at the Georgia branches.

78.

Relator's suspension and termination were in retaliation of him reporting to corporate security executives and to branch operations management.

## COUNT ONE

## (VIOLATION OF FALSE CLAIMS ACT-- 31 U.S.C. § 3729(a)(1)(A))

79.

Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

80.

The False Claims Act provides that any person who knowingly presents, or causes to be presented to the United States, a false or fraudulent claim for payment or approval, is liable for (a) three times the amount of the damages sustained by the United States, and (b) civil penalties ranging from $5,500 to $11,000 for each claim. 31 U.S.C. § 3729; 28 C.F.R. § 85.3(a)(9).

81.

Upon information and belief, Garda, by and through its officers, agents, and employees, knowingly presented, or caused to be presented to an officer or employee of the United States false or fraudulent claims that induced the United States to approve the contract with Garda and/or pay Garda in violation of 31 U.S.C. § 3729(a)(l)(A).

82.

Said claims were false and fraudulent because of (1) Misappropriation, Misuse and Conversion of Inventories; (2) False Reporting of Inventories; (3) Inadequate and Failed Security Measures; and (4) Unauthorized Access to Inventories.

83.

Said false and fraudulent claims were presented, as alleged, by Garda with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance as to whether they were false.

84.

In awarding contracts and maintaining contracts with Garda, the United States relied on these false and fraudulent claims, was ignorant of the truth regarding these false and fraudulent claims, and would not have awarded or

KH428964.DOC 3                                26

maintained contracts with Garda, and/or tendered payment if it had known of these false and fraudulent claims.

85.

As a direct and proximate result of the false and fraudulent claims made by Garda, the United States has suffered damages and therefore is entitled to recovery as provided by the FCA for each such violation.

## COUNT TWO

## (VIOLATION OF FALSE CLAIMS ACT -- 31 U.S.C. § 3729(a)(1)(D))

86.

Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

87.

Upon information and belief, Garda has in its possession, custody, or control property or money used, or to be used, by the United States, and knowingly delivers, or causes to be delivered, less than all of that money or property in violation of 31 U.S.C. § 3729(a)(1)(D).

KH428964.DOC 3                    27

88.

Garda maintains in its custody money used or to be used by the United States, but converts the money to its own use and causes to be delivered less than all of the money to the Federal Reserve inventories.

89.

Each day Garda knowingly delivers and/or provides false accounting reports of the balance in the Federal Reserve inventory, delivering less than all of the money owned by the Federal Reserve and in Garda's custody.

90.

As a direct and proximate result of the conversion of United States property by Garda, the United States has suffered damages and therefore is entitled to recovery as provided by the FCA for each such violation.

## COUNT THREE

## (VIOLATION OF FALSE CLAIMS ACT -- CONSPIRACY TO SUBMIT FALSE CLAIMS, 31 U.S.C. § 3729(a)(l)(C))

91.

Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

KH428964.DOC 3                                    28

92.

Upon information and belief, Garda USA, Inc. and Garda CL Southeast, Inc. conspired and agreed with each other and with others to defraud the United States, as alleged in Count One and Count Two above.

93.

As a direct and proximate result of the false and fraudulent claims made by Garda, the United States has suffered damages and therefore is entitled to recovery as provided by the FCA for each such violation.

## COUNT FOUR

### (VIOLATION OF FALSE CLAIMS ACT-- 31 U.S.C. § 3730(h))

94.

Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

95.

Relator was discriminated and conspired against and ultimately discharged from his employment with Garda, by and through the acts of Garda's officers, agents, and employees, as a direct result of lawful actions taken by Relator in furtherance of this action and investigation premised on violations of the False

KH428964.DOC 3                                29

Claims Act, and of efforts by Relator to stop one or more violations of the False Claims Act.

96.

The lawful and legally protected actions taken by Relator included, but were not limited to, the submission of reports to corporate security executives and to branch operations management regarding problematic human resources practices and security procedure violations.

97.

As alleged above, Garda, including its supervisors, managers, directors, and employees, suspended and discharged Relator, in violation of 31 U.S.C. § 3730(h). As such, Garda is subject to liability under that provision.

98.

The actions of Garda, including its supervisors, managers, directors, and employees, as set forth above, violated 31 U.S.C. § 3730(h) and caused damages to Relator.

**JURY TRIAL DEMAND**

Relator demands a trial by jury of all claims asserted in this Complaint.

WHEREFORE, Relator respectfully requests this Court to enter judgment against Garda, as follows:

(a) That the United States be awarded damages in the amount of three times the damages sustained because of the false claims and fraud alleged within this Complaint, as the FCA, 31 U.S.C. §§ 3729, *et seq.*, provides;

(b) That civil penalties of $11,000 be imposed for each and every false claim that Garda presented to the United States;

(c) That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs and expenses which the Relator necessarily incurred in bringing and pressing this case;

(d) That the Court grant permanent injunctive relief to prevent any recurrence of the FCA claims for which redress is sought in this Complaint;

(e) That the Relator be awarded the maximum amount allowed to him pursuant to the FCA;

(f) That this Court enter judgment against Garda for the relief provided by 31 U.S.C. 3730(h), including attorney's fees and costs and damages in an amount to be determined at trial and to include two times the amount of back pay, interest on the back pay, and

compensation for any special damages, along with such other and further relief as the Court deems proper; and

(g)   That this Court award such other and further relief as it deems proper.

Respectfully submitted this 25th day of July, 2017.

/s/ Zahra S. Karinshak
Zahra S. Karinshak
Georgia Bar No. 407911
Brittany A. Nash
Georgia Bar No. 230996

KREVOLIN & HORST, LLC
1201 W. Peachtree Street, N.W.
Suite 3250, One Atlantic Center
Atlanta, GA 30309
(404) 888-9700
(404) 888-9577 (facsimile)
*Counsel for Relator*

KH428964.DOC 3                        32